



*(Family Abstract)*

Return To:
New Century Mortgage
Corporation
18400 Von Karman. Ste 1000
Irvine. CA 92612

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman. Ste 1000
Irvine. CA 92612



FEB 10 2006

Block 334, Lot 22 ——[Space Above This Line For Recording Data]————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  January 31. 2006
together with all Riders to this document.
(B) "Borrower" is Frank Kuka and Claudia Kuka. Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

VMP®-6(NJ) (0005) 02

Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

M. CLAIRE FRENCH, CTY CLK
MONMOUTH COUNTY, NJ
INSTRUMENT NUMBER
2006023904
RECORDED ON
Feb 14, 2006
1:19:55 PM
BOOK:OR-8542
PAGE:833
Total Pages: 20
COUNTY RECORDING    $220.00
FEES
TOTAL                $220.00

ORIGINAL DOCUMENT POOR QUALITY

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated  January 31, 2006
The Note states that Borrower owes Lender FOUR HUNDRED EIGHTY-SEVEN THOUSAND FIVE
HUNDRED AND 00/100                                                            Dollars
(U.S. $487,500.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 03/01/2036
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Arm Rider Addendum |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

ORIGINAL DOCUMENT POOR QUALITY

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Monmouth :
      [Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof

Property Account Number: Block 334 Lot 22      which currently has the address of
69 Bonnie Drive, Township of Manalapan      [Street]
Englishtown      [City], New Jersey 07726-      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(NJ) (0005).02      Page 3 of 15      Initials:      Form 3031 1/01

ORIGINAL DOCUMENT POOR QUALITY

## SCHEDULE A
## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the Township of Manalapan, County of Monmouth and State of New Jersey, being more particularly described as follows:

BEING known and designated as Lot 22 in Block 334 as shown on a certain map entitled, "Final Plat od Union Woods, situated in Manalapan Township, Monmouth County, New Jersey", and filed in the Monmouth County Clerk's Office on October 1, 1985 in Case Number 203, Sheet 16.

BEGINNING at a point in the Southerly line of Bonnie Drive, (50' wide), said point being distant 216.43 feet Northeastwardly from the intersection of the Southeasterly line of Saupe Drive, (50' wide), extended with said Southerly line of Bonnie Drive extended and from said beginning point running; thence

(1) Along said Southerly line of Bonnie Drive, North 87 degrees 10 minutes 00 seconds East, 100.00 feet to a point therein; thence

(2) South 02 degrees 50 minutes 00 seconds East, 216.06 feet to a point; thence

(3) South 82 degrees 36 minutes 52 seconds West, 100.31 feet to a point; thence

(4) North 02 degrees 50 minutes 00 seconds West, 224.02 feet to a point in said Southerly line of Bonnie Drive, said point being the point and place of BEGINNING.

THE above description was made in accordance with a survey prepared by, Seneca Survey Company, Inc., dated February 14, 2000.

*Note For Information Only:*
The land referred to in this Commitment is commonly known as Lot(s) 22 Block 334 on the Tax Map, Township of Manalapan, in the County of Monmouth.

ORIGINAL DOCUMENT POOR QUALITY

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 31st    day of January, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
New Century Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument
and located at: 69 Bonnie Drive, Township of Manalapan, Englishtown, NJ
07726·

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of        11.350 %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of March, 2008        ,
and on that day every 6th        month thereafter. Each date on which my interest rate
could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based
upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Seven And Thirty-five Hundredth(s)                        percentage points
(        7.350 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument
**-838R (0402) Form 3138 1/01**
Page 1 of 3        Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

ORIGINAL DOCUMENT POOR QUALITY

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     12.850 % or less than             11.350 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half                                                          percentage points (            1.500 %) from the rate of interest I have been paying for the preceding 6         months. My interest rate will never be greater than                 18.350 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)      _____ (Seal)
Frank Kuka         -Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
Claudia Kuka       -Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                          -Borrower

VMP-838R (0402)              Page 3 of 3                 Form 3138 1/01



# · ADJUSTABLE RATE RIDER ADDENDUM
(Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **31st** day of **January** **2008** and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender")

Property securing repayment of the Note is described in the Security Instrument and located at:
**69 Bonnie Drive, Township of Manalapan, Englishtown, NJ 07726-**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

4.    **(D) LIMITS ON INTEREST RATE CHANGES**
The interest rate I am required to pay at the first change date will not be greater than **12.850%** or less than **11.350%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points(s) ( **1.500%**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **18.350%** or less than **11.350%**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

**Frank Kuka**

**Claudia Kuka**

NCMC
Adjustable Rate Rider Addendum
RE-102   (082296)          Page 1 of 1

ORIGINAL DOCUMENT POOR QUALITY

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **31st** day of **January** **2006** ,
and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the
"Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's
Note to
**New Century Mortgage Corporation** (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:
**69 Bonnie Drive, Township of Manalapan, Englishtown, NJ 07726-**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the
provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall
prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or
Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and
Lender further covenant and agree as follows:

**4. (D) LIMITS ON INTEREST RATE CHANGES**
   **The interest rate I am required to pay at the first change date will not be greater than**
   **12.850 %** or less than **11.350 %. Thereafter, my interest rate**
will never be increased or decreased on any single Change Date by more than
**One And One-half** percentage point(s) ( **1.500 %**) from
the rate of interest I have been paying for the preceding **6** months. My interest rate will never be
greater than **18.350 %** or less than **11.350 %.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider Addendum.

_____       _____
**Frank Kuka**

_____       _____
Claudia Kuka

_____       _____


_____       _____

NCMC
Adjustable Rate Rider Addendum
RE-102                                 Page 1 of 1

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts



due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 

ORIGINAL DOCUMENT POOR QUALITY

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under *Section 22 or otherwise*, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



ORIGINAL DOCUMENT POOR QUALITY

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

ORIGINAL DOCUMENT POOR QUALITY

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



ORIGINAL DOCUMENT POOR QUALITY

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

ORIGINAL DOCUMENT POOR QUALITY

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the



-6(NJ) (0005).02                     Page 11 of 15            Initials:                Form 3031 1/01

ORIGINAL DOCUMENT POOR QUALITY

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 

ORIGINAL DOCUMENT POOR QUALITY

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

ROBERT WOJCIECHOWSKI
Notary Public Of New Jersey
Commission Expires August 4, 2008

_____ (Seal)
Frank Kuka                         -Borrower

_____ (Seal)
Claudia Kuka                       -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                 -Borrower

**STATE OF NEW JERSEY,**  MONMOUTH                        County ss:

On this 31ˢᵀ day of January 2006              , before me, the subscriber,
personally appeared FRANK KUKA AND CLAUDIA KUKA

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

Notary Public

ROBERT WOJCIECHOWSKI
Notary Public Of New Jersey
Commission Expires August 4, 2008

Initials:

-6(NJ) (0005) 02          Page 15 of 15          Form 3031 1/01

UNORIGINAL DOCUMENT POOR QUALITY

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **31st** day of **January** **2006** , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to
**New Century Mortgage Corporation**                                         (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:
**69 Bonnie Drive, Township of Manalapan, Englishtown, NJ 07726-**
(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4.    (D) LIMITS ON INTEREST RATE CHANGES**
    The interest rate I am required to pay at the first change date will not be greater than **12.850%** or less than **11.350%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500%**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **18.350%** or less than **11.350%**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

_Frank Kuka_ _____                    _____

**Frank Kuka**

_Claudia Kuka_ _____                    _____

Claudia Kuka

_____                    _____

_____                    _____

NCMC
Adjustable Rate Rider Addendum
RE-102 ▄▄▄▄▄                    Page 1 of 1

ORIGINAL

# ADJUSTABLE RATE BALLOON NOTE
### 2 Year Rate Lock
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| **January 31, 2006** | **Englishtown** | **New Jersey** |
|---|---|---|
| [Date] | [City] | [State] |

**69 Bonnie Drive, Township of Manalapan, Englishtown, NJ 07726-**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U S $ 487,500.00          (this amount is called "Principal"), plus *interest, to the order of Lender* Lender is **New Century Mortgage Corporation**

I will make all payments under this Note in the form of cash, check or money order
I understand that Lender may transfer this Note Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of 11.350 %. The interest rate I will pay may change in accordance with Section 4 of this Note
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month
I will make my monthly payments on the first day of each month beginning on          **April 1, 2006**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If, on **03/01/2036**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "
I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612**

or at a different place if required by Note Holder.

### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U S $ **4,661.77**          *This amount may change*

### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

NCMC
Adjustable Rate Balloon Note (Multi)
RE-527

Initials

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of March, 2008 , and on that day every 6th month thereafter Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Seven And Thirty-five Hundredth(s) percentage points ( 7.350 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.850 % or less than 11.350 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 18 350 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
                           5.000 % of my overdue payment of principal and interest  I will pay this late charge promptly but
only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by
a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and
all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to
me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right
to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.
Those expenses include, for example, reasonable attorneys' fees

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the
Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note
will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different
address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made
in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this
Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a
guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder
may enforce its rights under this Note against each person individually or against all of us together  This means that any one
of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means
the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to
the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same
date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in
this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment
in full of all amounts I owe under this Note. Some of those conditions read as follows

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)          _____ (Seal)
Frank Kuka                          -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                               -Borrower

Pay to the order of, without recourse
New Century Mortgage Corporation
By: _____
Steve Nagy
V.P Records Management

*[Sign Original Only]*

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: THAT New Century Mortgage Corporation

, existing under the laws of the
California                                                         , residing or located at
18400 Von Karman, Ste 1000                                         , in the City of
Irvine                                    , in the County of Orange                   and in
the State of California                         herein designated as the Assignor, for and in consideration of the
sum of ONE DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged,
does by these presents assign to ⋆
residing or located at
in the City of                                    , the County of
and State of                                    , herein designated as the Assignee, a certain Mortgage dated
January 31, 2006                    , made by Frank Kuka and Claudia Kuka, Husband and
Wife

on real property located in the  city/township                                      of
Englishtown                                                          in the
County of Monmouth                                          and State of New Jersey:
See Legal Description Attached Hereto and Made a Part Hereof

⋆   Mortgage Electronic Registration
    Systems, Inc., its successors and assigns

    PO Box 2026, Flint, MI 48501-2026

to secure payment of the sum of FOUR HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED AND
00/100
which mortgage is recorded in the clerk's office of the County of Monmouth
in Book  OR-8542                        of Mortgages on Page  *833
    TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due
thereon, with the interest. TO HAVE AND TO HOLD the same unto the said Assignee forever, subject only to
all the provisions contained in the said Mortgage and the Bond, Note or other Obligation. AND the said Assignor
hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in

When Recorded Return to:
T.D. Service Company - SNS74
1820 E. First St., Suite 210          SNSC Loan
Santa Ana, CA 92705 ██████          MIN: 1000█
                                     MERS Phone: 1-888-679-6377

**SEND ANY NOTICES TO ASSIGNEE**

Station: View10 - 02/01/2013  10:36:37 AM          MONMOUTH COUNTY          Inst.# 2007065586 - Page 1

*(stamp, rotated 180°):*

TOTAL PAID $70.00
FEES
COUNTY RECORDING $70.00
Total Pages: 4
PAGE:5466
BOOK:OR-8550
3:17:05 PM
May 09, 2007
RECORDED ON
2007065586
INSTRUMENT NUMBER
MONMOUTH COUNTY,NJ
M CLAIRE FRENCH,CTY CLK

IMP ████████████████████

FRANK KU███
Specialized Loan Servicing, LLC          DOT Matches Request
LEHMAN COMMERCIAL PAPER INC

OCT 3 10 2013

PREPARED BY: RLMS
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

RECORD AND RETURN TO:
GENE R. MARIANO
PARKER McCAY
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey
08054-5054

**Record First**

**ASSIGNMENT OF MORTGAGE**

FOR VALUABLE CONSIDERATION:
ASSIGNOR:                          REALLY SPECIAL ASSETS, LLC
ASSIGNOR ADDRESS:                  8742 LUCENT BLVD, SUITE 300, HIGHLANDS
                                   RANCH, CO 80129

HEREBY GRANTS, ASSIGNS, AND TRANSFERS TO:
ASSIGNEE:                          LEHMAN COMMERCIAL PAPER, INC
ASSIGNEE ADDRESS:                  1271 AVENUE OF THE AMERICAS, NEW YORK, NY
                                   10020

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE:
DATED:                             01/31/2006
ORIGINAL LOAN AMOUNT:              $487,500.00
MORTGAGOR/BORROWER:                FRANK KUKA AND CLAUDIA KUKA
ORIGINAL MORTGAGEE/BENEFICIARY:    NEW CENTURY MORTGAGE CORPORATION
RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF MONMOUTH COUNTY, NEW
JERSEY
RECORDED: 02/14/2006 BOOK/VOLUME/LIBER: 8542  PAGE: 833  DOCUMENT: 2006023904
PROPERTY SUBJECT TO LIEN:          69 BONNIE DRIVE, TOWNSHIP OF MANALAPAN,
                                   ENGLISHTOWN, NJ 07726

TOGETHER WITH THE PROMISSORY NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO,
THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST AND ALL RIGHTS ACCRUED
OR TO ACCRUE UNDER SAID MORTGAGE.

DATE: SEPTEMBER 24, 2013          REALLY SPECIAL ASSETS, LLC
                                  BY ROOSEVELT MANAGEMENT COMPANY LLC, ITS
                                  APPOINTED ATTORNEY IN FACT

                                  BY:
                                  NAME: WILLIAM S. BELL
                                  TITLE: VICE PRESIDENT


                        **ACKNOWLEDGMENT**
STATE OF      **TEXAS**    ) SS:
COUNTY OF     **DALLAS**

ON SEPEMBER 24, 2013, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID
STATE, PERSONALLY APPEARED, **WILLIAM S. BELL, VICE PRESIDENT**, PERSONALLY KNOWN
TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY
AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE
COMPANY AND ACKNOWLEDGED TO ME THAT SUCH **VICE PRESIDENT**, EXECUTED THE WITHIN
INSTRUMENT PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.
WITNESS MY HAND AND OFFICIAL SEAL.

ROSEMARY RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
March 01, 2014

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:

**DO NOT GO BELOW THIS LINE**

M. CLAIRE FRENCH,CITY
MONMOUTH COUNTY,NJ
INSTRUMENT NUMBER
201312 0026
RECORDED ON
Oct 3, 2013
9:37:39 AM
BOOK:OR-9043
PAGE:3583
Total Pages:1
COUNTY RECORDING   $40.00
FEES
TAX PAID           $40.00

# Monmouth County Document Summary Sheet

| Type | ASSIGNMENT/MORTGAGE |
|---|---|
| Consideration | |
| Submitted By | ORION FINANCIAL GROUP (AFFILIATED COMPUTER SERVICES/PD V) |
| Document Date | 02/08/2013 |

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | | | 2006023904 | |

**ASSIGNMENT/MORTGAGE**

**MORTGAGOR**

| Name | Address |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |
| CLAUDIA KUKA | |
| FRANK KUKA | |

**ASSIGNEE**

| Name | Address |
|---|---|
| REALLY SPECIAL ASSETS LLC | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

INST. # 2013045902 - Page 3 of 3

PREPARED BY & RETURN TO:
M. E. Wileman
2860 Exchange Blvd. #100
Southlake, TX 76092

## Assignment of Mortgage

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") P.O. Box 2026, Flint, MI 48501-2026 (Assignor) by these presents does assign, and set over, without recourse, to REALLY SPECIAL ASSETS LLC c/o Specialized Loan Servicing LLC, 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by FRANK KUKA AND CLAUDIA KUKA, HUSBAND AND WIFE to NEW CENTURY MORTGAGE CORPORATION    Said mortgage Dated: 1/31/2006 is recorded in the State of NJ, County of Monmouth on 2/14/2006, as Instrument # 2006023904 Book 8542 Page 833 AMOUNT: $ 487,500.00    ASSIGNMENT FROM NEW CENTURY MORTGAGE CORPORATION TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) RECORDED ON 05/09/2007, INSTRUMENT 2007065586, BOOK OR-8650, PAGE 5466 TOWNSHIP MANALAPAN Property Address: 69 BONNIE DR, TOWNSHIP OF MANALAPAN, ENGLISHTOWN, NJ 107726
IN WITNESS WHEREOF, the Undersigned Corporation/Trust has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on: 02/08/2013
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

By: _____

Michael Wileman, Assistant Secretary

State of Texas, County of Tarrant
    On 02/08/2013, before me, the undersigned, personally appeared Michael Wileman, who acknowledged that he/she was authorized to and did execute this instrument as Assistant Secretary of/for  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")  and that he/she executed this instrument as the act of the entity named in this instrument and such execution was done as the free act and deed of  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") .

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2014

_____

Notary public, C. Lafferty
My commission expires: November 30, 2014

PREPARED BY: RLMS
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

## ASSIGNMENT OF MORTGAGE

| | |
|---|---|
| FOR VALUABLE CONSIDERATION:<br>ASSIGNOR:<br>ASSIGNOR ADDRESS: | LEHMAN COMMERCIAL PAPER, INC<br>1271 AVENUE OF THE AMERICAS, NEW YORK, NY 10020 |

HEREBY GRANTS, ASSIGNS, AND TRANSFERS TO:

| | |
|---|---|
| ASSIGNEE: | U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2013-3T |
| ASSIGNEE ADDRESS: | 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST PAUL, MN 55107 |

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE:

| | |
|---|---|
| DATED: | 01/31/2006 |
| ORIGINAL LOAN AMOUNT: | $487,500.00 |
| MORTGAGOR/BORROWER: | FRANK KUKA AND CLAUDIA KUKA |
| ORIGINAL MORTGAGEE/BENEFICIARY: | NEW CENTURY MORTGAGE CORPORATION |

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF MONMOUTH COUNTY, NEW JERSEY

RECORDED: 02/14/2006 BOOK/VOLUME/LIBER: 8542 PAGE: 833 DOCUMENT: 2006023904

| | |
|---|---|
| PROPERTY SUBJECT TO LIEN: | 69 BONNIE DRIVE, TOWNSHIP OF MANALAPAN, ENGLISHTOWN, NJ 07726 |

TOGETHER WITH THE PROMISSORY NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID MORTGAGE.

DATE: SEPTEMBER 24, 2013

LEHMAN COMMERCIAL PAPER, INC
BY ROOSEVELT MANAGEMENT COMPANY LLC, ITS
APPOINTED ATTORNEY IN FACT

BY
NAME  WILLIAM S. BELL
TITLE  VICE PRESIDENT

## ACKNOWLEDGMENT

STATE OF    TEXAS    ) SS:
COUNTY OF    DALLAS

ON SEPEMBER 24, 2013, BEFORE ME THE UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED, WILLIAM S. BELL, VICE PRESIDENT, PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE COMPANY AND ACKNOWLEDGED TO ME THAT SUCH VICE PRESIDENT, EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS. WITNESS MY HAND AND OFFICIAL SEAL.

ROSEMARY RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
March 01, 2014

NOTARY PUBLIC IN AND FOR SAID COUNTY AND STATE
MY COMMISSION EXPIRES ON:

DO NOT GO BELOW THIS LINE







## Monmouth County Document Summary Sheet

| | |
|---|---|
| MONMOUTH COUNTY CLERK<br>PO BOX 1251<br>MARKET YARD<br>FREEHOLD NJ 07728 | **Return Name and Address**<br>Abstrax LLC<br>88 Silva Lane<br>Middletown, RI 02842<br>(VIA UPS) |

**Official Use Only**
CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2017098963
RECORDED ON
Oct 10, 2017
11:31:02 AM
BOOK:OR-9252
PAGE:7763
Total Pages: 3

COUNTY RECORDING    $60.00
FEES
TOTAL PAID          $60.00

| | | |
|---|---|---|
| Submitting Company | Abstrax LLC | |
| Document Type | Assignment of Mortgage | |
| Document Date *(mm/dd/yyyy)* | | 07/24/2017 |
| No. of Pages of the Original Signed Document<br>*(Including the cover sheet)* | | 3 |
| Consideration Amount *(If applicable)* | | |
| **Official Use Only** | | 3 |

OCT 0 2 2017 H

| First Party<br>*(Grantor or Mortgagor or Assignor)*<br>*(Enter up to five names)* | **Name(s)**  *(Last Name First Name Middle Initial Suffix)*<br>*(or Company Name as written)*<br>U.S. Bank National Association<br>RMAC Trust, Series 2013-3T<br>Rushmore Loan Management Services LLC<br>Kuka Frank<br>Kuka Claudia | **Address** *(Optional)* |
|---|---|---|
| Second Party<br>*(Grantee or Mortgagee or Assignee)*<br>*(Enter up to five names)* | **Name(s)**  *(Last Name First Name Middle Initial Suffix)*<br>*(or Company Name as written)*<br>MTGLQ Investors, L.P. | **Address** *(Optional)* |

| Parcel Information<br>*(Enter up to three entries)* | Municipality | Block | Lot | Qualifier | Property Address |
|---|---|---|---|---|---|
| | | | | | 69 Bonnie Dr<br>Township of Manalapan<br>NJ, 07726 |

| Reference Information<br>*(Enter up to three entries)* | Book Type | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|---|
| | OR | 8542 | 833 | | |

***DO NOT REMOVE THIS PAGE.**
**DOCUMENT SUMMARY SHEET (COVER SHEET) IS PART OF MONMOUTH COUNTY FILING RECORD. RETAIN THIS PAGE FOR FUTURE REFERENCE.**

Prepared By:
Roosevelt Management Company, LLC

When recorded mail to:
Abstrax, LLC
Attn: Collateral Dept.
88 Silva Lane, 2nd Floor
Middletown, RI 02842

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, U.S. Bank National Association, Not In Its Individual Capacity, But Solely as Trustee for the RMAC Trust, SERIES 2013-3T by Rushmore Loan Management Services LLC its appointed attorney in fact, whose address is 60 Livingston Avenue, Saint Paul, MN 55107, hereby assign and transfer to MTGLQ Investors, L.P., whose address is 6011 Connection Drive, Irving, TX 75039, all its right, title and all beneficial interest in and to a certain Mortgage and Note, executed by FRANK KUKA AND CLAUDIA KUKA, HUSBAND AND WIFE to NEW CENTURY MORTGAGE CORPORATION and bearing the date of February 14, 2006 and recorded on March 12, 2006, with an original loan amount of $487,500.00 in the office of the Recorder of Monmouth County, State of NJ, in Book OR-8542 at Page 833 or Instrument # 2006023904.

Property Address: 69 Bonnie Dr Township Of Manalapan, NJ 7726
Legal Description: See Attached Exhibit A.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on _2/24/17_

U.S. Bank National Association, Not In Its Individual Capacity, But Solely as Trustee for the RMAC Trust, SERIES 2013-3T by Rushmore Loan Management Services LLC its appointed attorney in fact

By: _____
Name: **Drew Edwards**
Title: **Assistant Vice President**

State of Texas **Dallas**
County of **Nicole Johnson**
Before me _____, on this day personally appeared ___**Drew Edwards**___, known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledge to me that he/she/they/ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 24 day of July, 2017

(SEAL)

_____
Notary Public Signature

NICOLE JOHNSON
My Notary ID # 129379313
Expires April 8, 2021

EXHIBIT A

ALL that certain tract, lot and parcel of land lying and being in the Township of Manalapan, County of Monmouth and State of New Jersey, being more particularly described as follows:

Being known and designated as Lot 22 in Block 334 as shown on a certain map entitled, "Final Plat d Union Woods, situated in Manalapan Township, Monmouth County, New Jersey" and filed in the Monmouth County Clerk's Office on October 1, 1985 in Case Number 203, Sheet 16.

Beginning at a point in the Southerly line of Bonnie Drive, (50' wide), said point being distant 216.43 feet Northeasterly from the intersection of the Southeasterly line of Saupe Drive, (50' wide), extended with said Southerly line of Bonnie Drive extended and from said beginning point running; thence

(1) Along said Southerly line of Bonnie Drive, North 87 degrees 10 minutes, 00 seconds East, 100.00 feet to a point therein; thence

(2) South 02 degrees 50 minutes 00 seconds East, 216.06 feet to a point; thence

(3) South 82 degrees 36 minutes 52 seconds West, 100.31 feet to a point; thence

(4) North 02 degrees 50 minutes 00 seconds West, 224.02 feet to a point in said southerly Line of Bonnie Drive, said point being the point and place of the BEGINNING.

THE above description was made in accordance with a survey prepared by, Seneca Survey Company, Inc., dated February 14, 2000.



FRANK KUKA
69 BONNIE DR
MANALAPAN, NJ 07726

Attached please find your documents from Specialized Loan Servicing LLC (SLS). If you have received documents via email please DO NOT reply back to this email address. If you have any questions concerning these documents, please call us at 1-800-306-6059 and speak with the first available agent. Thank you for your consideration.

The information contained in this electronic mail transmission (including any attachments) is intended solely for its designated recipient(s) and is confidential. If you are not a designated recipient, you have received this communication in error and are hereby notified that you are strictly prohibited from reading, copying, printing, distributing, or otherwise disclosing any of the information contained herein. Please contact the sender immediately by telephone 1-800-306-6059, and delete the original and any copies of this communication (including any attachments), without reading or saving in any manner.

8742 Lucent Blvd, Ste 300  Highlands Ranch, CO  80129
Ph:  1-800-306-6059 Fax:  1-720-241-7526



THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: June 14, 2012

FRANK KUKA
69 BONNIE DR TOWNSHIP OF MANALAPAN , ENGLISHTOWN, NEW JERSEY 07726

Re: Loan Modification Agreement ██████████

Dear FRANK KUKA:

You are a valued customer of Specialized Loan Servicing LLC, and we appreciate your business. A modification of your loan has been approved. There are tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and a lower monthly payment, which will result in a current loan status. Please refer to the attached documentation for the specific terms related to your loan modification.

Additionally, an escrow account for payment of real estate taxes and insurance premiums may be required in conjunction with your loan modification. If required, an estimated monthly escrow amount is included below. The initial estimated amount is calculated based upon the tax and insurance information obtained while in the modification process, and may change. An escrow analysis statement referencing the actual payment and effective date will be mailed to you within four weeks of the modification being completed. SLS will draw on the escrow account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that SLS must place in escrow will also adjust, as permitted by law. This means that your monthly payment may change. An analysis of this account will be performed annually.

Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $25,214.62. You may pay this amount over a 5-year (60 months) period. If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.

In order to take advantage of these updates, please review the agreement, complete the signature, and remit certified funds.

- If you are signing this document electronically, you do not need to return a copy. Your certified check in the amount of $ 4,362.82 may be sent to SLS using one of the following payment options.
- If you received this document by mail and physically signed it, please return a copy to SLS with your certified check in the amount of $4,362.82. Your signed documents and certified funds may be sent to one of the two addresses referenced below.

| Regular Mail | Overnight Mail | Western Union |
|---|---|---|
| Specialized Loan Servicing LLC | Specialized Loan Servicing LLC | Your SLS loan number |
| P.O. Box 636005 | 8742 Lucent Blvd, Suite 300 | Code city "PAYSLS" |
| Littleton, CO 80163 | Highlands Ranch, CO 80129 | State "CO" |
| Attn: Cashiering Department | Attn: Cashiering Department | |

If you are a customer in bankruptcy, a written approval from your attorney acknowledging acceptance of these terms must be received in order to complete this process. Please return the approval letter to SLS using one of the addresses referenced above.

Certified Check Breakdown
| | |
|---|---|
| Modification Fee: | $ 500.00 |
| Estimated Escrow: | $ 1,415.68 |
| P&I Payment: | $ 2,332.14 |
| Cash Contribution: | $115.00 |

The modification of your loan will be completed and go into effect when both the signed document and certified funds are received by SLS on or before July 31, 2012. SLS will continue normal servicing of this loan until documents and funds are received. If your loan is delinquent or will become delinquent prior to this time, collections efforts will continue, including foreclosure activity. Payment history will continue to be reported to the credit bureaus during the loan modification process. You must continue to make your scheduled payments in order to avoid negative credit reporting.

You may wish to consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible. Please contact us at 1-800-306-6059 if you have any questions.

As a result of this Modification Offer, debt under your Mortgage Note may have/has been forgiven and there may be tax consequences to you. Please consult your tax advisor.

Sincerely,

Elvia #10424
Loan Resolution Department
Specialized Loan Servicing LLC (SLS)
8742 Lucent Blvd, Ste 300
Highlands Ranch, CO  80129
Ph:  1-800-306-6059
Fax:  1-720-241-7526

Calls will be monitored and recorded for quality assurance purposes.  If you do not wish for your call to be recorded, please notify the Customer Assistance Associate when calling.

Please be advised that if the Agreement is altered in any way that the modification agreement will be rejected and the offer to modify your mortgage loan will be voided. All terms of the original Note and Deed of Trust will be immediately effective, including any default status of the loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. If you have questions, please contact our Customer Care Center at 1-800-306-6057.



# LOAN MODIFICATION AGREEMENT
## On Balloon Mortgage Adjustable to Fixed Interest Rate

This Loan Modification Agreement ("Agreement"), made this 14th day of June, 2012, between FRANK KUKA ("Borrower") and Specialized Loan Servicing LLC, as servicer for the current Note Holder ("Servicer"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated January 31, 2006 and recorded in MONMOUTH county, NEW JERSEY in which the property is located, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 69 BONNIE DR TOWNSHIP OF MANALAPAN, ENGLISHTOWN, NEW JERSEY 07726, the real property described being set forth as follows:

See Legal description referenced in the original security instrument.

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, Servicer and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of July 1, 2012, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $484,922.82. Effective July 1, 2012 the Modified Principal Balance will be $625,000.00 (the "Modified Principal Balance"). The amount capitalized is $140,077.18 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a)   Unpaid Interest:  $124,218.82
    (b)   Escrow Advances: $0.00
    (c)   Corporate Advances: $15,858.36

2.    The amount to be written off is $ 58,612.03 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a)   Principal Balance: $0.00
    (b)   Unpaid Interest: $58,612.03
    (c)   Corporate Advances: $0.00
    (d)   Late Charges: $0.00

3.    The amount deferred through this modification agreement is $ 0.00 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

    (a)   Unpaid Interest: $0.00
    (b)   Corporate Advances: $0.00
    (c)   Principal: $0.00

4.    Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

(a) Prior deferred interest:  $0.00
(b) Prior deferred principal: $ 0.00

Deferred Items: The portion of the outstanding principal balance, corporate advances and/or unpaid interest that is referenced above has been deferred. The deferred amount will not accrue interest. The deferred amount will remain due and owing but is not required to be paid until the loan is paid in full or if not sooner paid, on the Maturity Date or Modified Maturity Date. The deferred amount is not a forgiveness of partial debt and will not be reported as such.

5.    Monthly Payments and Modified Maturity Date. Borrower promises to pay the Modified Unpaid Principal Balance, plus interest, to the order of the Note Holder. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.000%, from July 1, 2012.

Borrower promises to make monthly payments of principal and interest of U.S. $ 2,332.14 beginning on August 1, 2012, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

If on March 1, 2036, ('Balloon' or 'Modified Balloon Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Balloon Maturity Date.

6. Place of Payment. Borrower will make such payments at: P.O. Box 105219, Atlanta, GA 30348-5219 Attn: Remittance Processing or at such other place as the Note Holder may require.

7.    Intentionally left blank.

8.    Compliance and Covenants. Borrower will also comply with all other covenants, agreements, and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and other payments that Borrower is obligated to make under the terms of the Security Instrument. The original loan documents may have included Riders for unique ARM, Interest Only and Conversion features. The Rider terms and features remain in effect unless otherwise modified by this Agreement.

9.    Corrections and Omissions. Borrower agrees to execute such other and further documents as may be reasonably necessary to consummate the transaction contemplated herein or to perfect the lien and security interest intended to secure the payment of the loan evidenced by the Note.

10.    Agreement is Binding. This Agreement, when executed, shall be binding and inure to the heirs, executors, administrators and assigns of Borrower.

11.    In the event Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy, notwithstanding anything in this Agreement to the contrary, including, without limitation the provisions in the proceeding paragraph, Borrower and Note Holder acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy and that this Agreement shall not be construed as: (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; and/or (2) as a violation of the post-discharge injunction set forth in the 11 U.S.C. Section 524. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.

12.    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Note Holder will be bound by, and comply with, all the terms and provisions thereof, as amended by this Agreement.

13.    Property Transfer.    If all or any part of the Property or any interest in the Property is sold or transferred without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the terms of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice to or demand on Borrower.

In Witness Whereof, Servicer and Borrower have executed this Agreement.

Date: 6 . 25 . 12

FRANK KUKA

Specialized Loan Servicing LLC
As Servicer
By:
Name: Susan Miller
Title: Vice President
Date: